UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____
:
UNITED STATES OF AMERICA           :
:
-against-           : 19 Cr. 283 (WFK)
:
ADRIAN MATTEI           :
:
_____:

# DEFENSE SENTENCING SUBMISSION

Matthew J. Kluger, Esq.
888 Grand Concourse, 1H
Bronx, New York 10451
(718) 293-4900

MATTHEW J. KLUGER
ATTORNEY AT LAW

---

888 GRAND CONCOURSE, SUITE 1H
BRONX, NEW YORK 10451
(718) 293-4900 • FAX (718) 618-0140
www.klugerlawfirm.com

March 9, 2023

By ECF
Honorable William F. Kuntz II
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, N.Y. 11201

        Re:    **United States v. Adrian Mattei**
                   **19 Cr. 283 (WFK)**

Dear Judge Kuntz:

      This letter is respectfully submitted on behalf of Adrian Mattei in advance of his sentencing scheduled for March 21, 2023 at 2:30 p.m. On or about June 26, 2019, Mr. Mattei was "writted" into the Eastern District where he was charged with distributing a controlled substance within 1,000 feet of a school in violation of Title 21 USC §841(a)(1), 841(b)(1)(C) and 860(a). He has been detained at the Metropolitan Detention Center ever since.[1] On March 26, 2021, Mr. Mattei pled guilty as charged without a plea agreement. Due to well-documented disagreements amongst the parties concerning the correct U.S. Sentencing Guidelines range, a Fatico hearing was held before your Honor on January 30, 2023. Although much has been written already about the correct Guidelines range in this case, little has been said about Mr. Mattei himself and the other 18 USC §3553(a) factors present in this case. Accordingly, the defense writes now to supplement the record with this important information.

      The Government submits that with the proposed guidelines enhancements, at an offense level of 14 and a criminal history category of VI, the correct guidelines range in this case is 37 to 46 months in prison. The defense on the other hand argues that no guidelines enhancements properly apply and at a total offense level of 9 and a CHC of VI, the correct guidelines range is 21 to 27 months' imprisonment. Regardless of what the Court ultimately determines the correct guidelines range to be, nothing in this case warrants a sentence, as the government has argued, *above* the applicable guidelines. Moreover, if the Court were to conclude that Mattei's prior conduct, as testified to at the

---

[1] Approximately 45-months.

2

Fatico hearing, was somehow relevant to his conduct in this case, then the Court should also adjust Mattei's sentence downward pursuant to U.S.S.G. §5K2.23 for the one-year sentence that he has already served on the New York State conviction for the same conduct.[2]

Mr. Mattei appreciates the seriousness of his offense and continues to take full responsibility for his actions. Accordingly, for the reasons stated herein, Mr. Mattei respectfully requests that he be sentenced to 24-months, which is squarely within the applicable guidelines range of 21 to 27 months. Any sentence more than 24-months would be greater than necessary to satisfy the objectives of §3553(a)(2). In further support of the requested sentence, the following documents are attached hereto for the Court's consideration:

**Exhibit A:**   Character Letters

- Doris Maldonado, sister
- Edwin Mattei, brother
- Ulysses Maldonado, brother
- Nicole Clyne, prison advocate and actress

**Exhibit B**:   MDC Certificates
- Resume Writing
- Relapse Prevention
- Self Help: Anger Management
- Self Help: Criminal Lifestyles
- Financial-Modified Operations

**Exhibit C**:   Bible Study

**Exhibit D**:   Positive test for COVID-19 (2/04/2021)

This defense submission is provided to assist the Court in determining a sentence which is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a). As noted by the Supreme Court, "[h]ighly relevant - if not essential - to the selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." Williams v. New York, 337 U.S. 241, 246-247, 69 S. Ct. 1079 (1949). This "ensures that the punishment will suit not merely the offense *but the individual defendant as well*." Wasman v. United States, 468 U.S. 559, 564, 104 S.

---

[2] Mattei served six-months of a 12-month state sentence while he was in federal custody on this case. Accordingly, he will not receive any federal credit for the first six-months that he spent in federal custody after he was transferred in from state custody. Thus, if the Court were to find that the state matter was related to this case, then the ultimate sentence should be adjusted downward by at least 6-months to account for the difference and "achieve a reasonable punishment for the instant offense." USSG §5K2.23.

3

Ct. 3217 (1984)(emphasis added). (See also Pepper v. United States, 131 S. Ct. 1229 (Sotomayor, J.)).

### Sentencing After *United States v. Booker*

The Supreme Court's decision in United States v. Booker substantially altered a court's obligation with respect to sentencing. The Sentencing Guidelines are of course no longer mandatory and while still important and instructive, they remain just one of several factors set forth in 18 U.S.C. § 3553(a) which a sentencing court must consider in determining a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." The stated purposes are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 USC §3553(a)(2)

To arrive at such a sentence, the Court is further directed to consider: (1) the nature and circumstances of the offense and the history and characteristics of the offender; (2) the kinds of sentences available; (3) the kinds of sentence and the sentencing range established in the Sentencing Guidelines; (4) policy statements issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among similarly situated defendants; and (6) the need to provide restitution to any victims of the offense. See 18 U.S.C. § 3553(a)(1), (a)(3)-(7).

### Personal History and Characteristics

Mr. Mattei's personal history and characteristics are addressed in the *Offender Characteristics* section (Part C) of the PSR. To summarize however, Adrian Alexander Mattei was born on May 27, 1987, in Brooklyn, New York. Mattei's father Alberto Mattei, passed away in 2015, at age 67, after suffering from a stroke. His mother, Judith Maldonado, age 69, resides in Queens, New York. She is in good health and is a homemaker. Ms. Maldonado is aware of Mettei's arrest and remains supportive of him. Mr. Mattei has two living full siblings and one full sibling who is deceased. Edwin Mattei, age 41, resides in Brooklyn, New York, with his three children and is in good health. Edwin was in and out of prison from the late 1990's until 2014 for petit drug offenses. Jason Maldonado, age 38, resides in New York, New York, where he works in construction and is in good health. He is not married and has no children. Alberto Mattei passed away in 2008 from a gunshot wound.

Mr. Mattei also has six maternal half-siblings. Naomi Maldonado, age 50, Diana Maldonado, age 49, Ulysis Maldonado, Christian Maldonado, age 40s, Ruben Maldonado, age 40s, and Dorris Maldonado, age 36. Mattei was raised by his mother and older siblings in a lower-income household, in which his mother struggled to provide for the needs of her children. Ms. Maldonado received government assistance and his older siblings started working during their teenage years to help provide for the younger siblings. From a young age, Mattei was surrounded by numerous bad influences. His older siblings were involved with the "wrong crowds" and criminal activity. When he was only 13 years old, Mr. Mattei left home, started using drugs, and "bounced around" to different residences until 2004, when he was incarcerated the first time.

Mr. Mattei has two young children from two prior relationships. Tartier Ruiz, age 13, resides with his mother Elizabeth and attends a private school in Brooklyn. Adrian Mattei, age 10, is autistic and resides with his mother Jessica Walker and attends a public school in Brooklyn. Mr. Mattei reported that he has a good relationship with both of his sons and that prior to his incarceration, he would see them both on a weekly basis and provide financial support when he was able.

Regardless of the difficulties that he and his family have had in the past, three of Mattei's siblings have written meaningful letters to the Court explaining their current circumstances and pledging their support for their brother. Mattei's sister Doris Maldonado, a U.S. Customs Border Protection officer, writes that she "wants nothing more than to see my younger brother be an honest productive man in society. I know his past is far from something to be proud of and I don't agree with any of his actions, but I know what he is capable of if he's given the chance." Edwin Mattei, Mattei's brother who has done time himself, writes that "coming from the same place that he is now, I know first-hand that he will be more prone to succeed in becoming a model citizen through hard work, dedication, and supportive people in his life. I would take full responsibility for him and help him get to where I am today." Finally, brother Ulysses Maldonado, who has also done time, writes, "I will always be thankful for being given a chance to be a productive part of society. Words are easy to say, but I try to live a life that speaks louder than words. My prayers are that Adrian will follow my example. He will definitely have my support and the support of his family." See *Exhibit A*.

## The Nature and Circumstances of the Offense

The facts of this case are relatively straightforward. On four occasions in July and August of 2018, Mr. Mattei sold small quantities of heroin (some of which was mixed with fentanyl) to a confidential informant working for the FBI. The *total* weight of the controlled substances in question was less than two grams. The total amount spent by the CI to purchase the drugs over four separate sales was less than $400. Yet, the government seeks to parlay this relatively uncomplicated and, by federal standards, minor case into something greater than what it is by using what the defense has steadfastly argued is unrelated conduct. Moreover, still not satisfied with the result even under their version of the guidelines, the government now seeks a sentence in excess of the guidelines, something that should be reserved only for the most egregious and anomalous conduct.

The Court should reject the government's request outright and, at most, impose a guidelines sentence of 24-months as requested above.

Adrian Mattei is clearly a product of his environment. The defense concedes that this argument may be overused to some extent but here, it clearly applies. From a mere 13-years old, Mattei was essentially homeless, bouncing around from place to place with no stable home, no money, no genuine opportunities, no education, and no positive role models.[3] Thus, it should not come as a complete surprise that Mattei ultimately turned to using and selling drugs to support himself. Naturally, going in and out of jail has only made what was already a bad situation even worse. As the evidence at the Fatico hearing demonstrated, Mattei is coarse, argumentative, and controlling. Indeed, the same traits that helped him survive on the street are the same ones that frequently put him at odds with the law and in his personal relationships.

The defense appreciates both the severity of the instant matter and the Court's obligation to protect the community. Yet, Mr. Mattei's life story has value and in many ways helps to explain his current circumstances. The question then is *what to do now*. The answer is not, as the government argues, to simply throw more jail time at Mattei, exceeding both what is necessary and what the guidelines recommend.[4] The reality is that at this point, no matter which version of the guidelines range the Court chooses to apply, Mattei has done his time. Four years in jail for $360 worth of heroin is certainly long enough to adequately reflect the seriousness of Mattei's offense, promote respect for the law, and provide just punishment for his offense, even if the Court were to factor in his domestic transgressions as well.[5]

The answer can be found in Section 3553(a) itself, which speaks to the equally important sentencing goal of rehabilitation. The statute requires that the Court "provide the defendant with needed educational or vocational training . . . in the most effective manner." 18 USC §3553(a)(2)(D). At this point, that is best accomplished by a period of supervised release, not even more prison time. Mattei must be provided with the support and tools he needs to become a productive, and law-abiding member of society. As the attached letters from his family attest, Mattei is not beyond saving and has the potential to succeed. Indeed, even in an environment like MDC where resources are scarce and hard to come by, Mattei has managed to show the Court that he is serious about his

---

[3] Not surprisingly, there exists a considerable amount of research which suggests that children raised in households lacking a father experience psychosocial problems with greater frequency than children with a father in the home. These problems have been found to extend into adolescence and adulthood and include an increased risk of substance use, depression, suicide, poor school performance, and contact with the criminal justice system.
https://www.mnpsych.org/index.php%3Foption%3Dcom_dailyplanetblog%26view%3Dentry%26category%3Dindustry%2520news%26id%3D54

[4] Notably, Mattei has done his time under incredibly difficult circumstances. He tested positive for COVID-19 in 2021 and has been incarcerated throughout the entire COVID-19 pandemic. See *Exhibit D*. Moreover, unlike BOP prison facilities, for numerous reasons, MDC is simply not suitable for long-term incarceration. Yet, as Probation reports, Mattei "has had no disciplinary incidents while in custody." *PSR* ¶49.

[5] Conduct which has already been accounted for by both the government's version of the guidelines as well as his prior NYS sentence for the same conduct.

rehabilitation by regularly attending bible study and availing himself of the few self-help classes that the jail has to offer. See *Exhibits B&C*.

To be sure, Adrian Mattei is certainly no angel. But frankly, given the arc of his life, we shouldn't expect him to be. In this case though, he has served his time and deserves a chance to show the Court, his family, and maybe even himself that if given the proper supervision and support, he can succeed and be a productive member of society.

### Sentence Request and Conclusion

Admittedly, Adrian Mattei has committed a serious crime and must be punished accordingly. Here, a guidelines sentence of 24-months is sufficient. Anything more would be too severe and work an injustice because the sentence would be greater than what is necessary to achieve the goals and purposes of sentencing. Given all of the §3553(a) factors discussed above, a guidelines sentence would adequately reflect the seriousness of Mr. Mattei's offense, promote respect for the law, and provide just punishment for his offense.

Thank you.

Respectfully submitted,

Matthew J. Kluger
*Attorney for Adrian Mattei*

cc:     AUSA Nicholas Moscow
        AUSA Chand Edwards-Balfour