

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

NJM:CWE
F. #2018R01751

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 17, 2023

<u>By ECF and Email</u>

The Honorable William F. Kuntz, II
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   United States v. Adrian Mattei
            <u>Criminal Docket No. 19-283 (WFK)</u>

Dear Judge Kuntz:

      The government respectfully submits this sentencing memorandum in advance of the sentencing hearing for the defendant Adrian Mattei, which is scheduled for March 21, 2023. For the reasons set forth herein, the government respectfully submits that a sentence above the United States Sentencing Guidelines ("Guidelines" or "USSG") range of 37 to 46 months' imprisonment is appropriate in this case.

    I.     <u>Background</u>[1]

      The defendant was a longtime drug dealer in Bushwick, Brooklyn. Specifically, the defendant dealt drugs in the Bushwick Houses, a New York City Housing Authority development close to New York City Public School 257, and on the grounds of the school itself. Presentence Investigation Report ("PSR") ¶¶ 4-5. In July and August 2018, the defendant sold heroin and fentanyl to one or more confidential informants working with the government. Id. ¶¶ 3-6.

      In approximately October 2018, the defendant met a single parent living in the Bushwick Houses ("Witness-1"). Jan Tr. 15:22-16:21. After moving into Witness-1's home, the defendant began to use Witness-1's apartment, and specifically the kitchen, to prepare crack cocaine and cocaine base for the defendant's customers. Id. at 18:23- 21:8. The defendant "cut up" crack cocaine in Witness-1's apartment, placed the product in small baggies, and then

---

      [1]     Unless otherwise noted, the facts in this section come from the Pre-Sentencing Report ("PSR") for the defendant and the evidentiary hearing before the Court on January 30, 2023 (Jan. Tr.).

provided crack cocaine to customers in exchange for money. Id. On at least one occasion, the defendant made Witness-1 deliver the crack cocaine to customers and on another occasion when a customer came to Witness-1's apartment, the defendant forced Witness-1 to complete the sale of crack cocaine. Id. The defendant forced Witness-1 to make the sales for him through threats and verbal abuse, and Witness-1 felt that Witness-1 had no choice but to comply. Id. at 20:22-21:19.

While staying at Witness-1's apartment, the defendant verbally and physically abused Witness-1 and Witness-1's children. After suspecting that Witness-1 was telling people about his business, the defendant threatened to kill Witness-1. Id. at 21:20-22:1. And when Witness-1 asked someone to get the defendant out of Witness-1's apartment, the defendant struck Witness-1 in the face. Id. at 22:18-23:23. Similarly, the defendant assaulted Witness-1's children, by pulling Witness-1's daughter's hair and striking Witness-1's son in the back of the head. Id. at 24:7-25:7.

On one occasion, the defendant brought Witness-1 and several women from the Bushwick Houses to a party at which Witness-1 understood that the women were prostituting themselves. Witness-1 believed that the defendant was in charge of the party. The defendant encouraged Witness-1 to engage in sex in exchange for money and to host similar "parties" in Witness-1's apartment, which Witness-1 declined to do. Id. at 26:1-28:22. The defendant also took money from Witness-1 when he got access to Witness-1's debit card. Id. at 28:24-29:15. Witness-1 felt so scared that Witness-1 did not feel like Witness-1 could object to the defendant's use of Witness-1's debit card. Id.

After some time living with Witness-1, the defendant began storing a gun in Witness-1's apartment, over Witness-1's objections. PSR ¶¶ 9, 37. The defendant put the firearm in a shoebox in Witness-1's closet. Jan. Tr. 29:16-30:16. Witness-1 felt that Witness-1 could not say "no" to the defendant and hesitated when the defendant asked to hide the gun in the apartment, so the defendant hid the gun in Witness-1's apartment. Id.

On the day of the defendant's arrest, he forced Witness-1 and Witness-1's children into a room and told them to be quite or they would be killed. Id. at 30:22-33:10. The defendant repeatedly instructed Witness-1 and Witness-1's children to keep quiet while in the room. Id. Eventually, the defendant submitted to the police for them to arrest him.

In June 2019, the defendant was indicted for selling heroin near a school in August 2018. The defendant pled guilty, without a plea agreement, in March 2021. PSR ¶ 1. On May 26, 2021, the United States Probation Office ("Probation") prepared a PSR which designated certain facts as "relevant" to the crime of conviction under the Guidelines. The "relevant" conduct provides for a total of a six-level enhancement. Defense counsel objected by arguing that the alleged "relevant" conduct in the PSR occurred months after the charged conduct and thus bears no connection to it. See ECF No. 37 at 2-3. As stated in its opposition, the government respectfully submits that the conduct described in the PSR is "relevant" because it arose out of the "same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). See ECF No. 38 at 13. Of course, even if such conduct were not relevant to the Guidelines—and it is—it is relevant to the Court's considerations under 18 U.S.C. § 3553(a), and is entirely proper to consider. See 18 U.S.C. § 3561 ("No limitation

shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

II. Applicable Law

The Supreme Court has explained that the Court "should begin all sentencing proceedings by correctly calculating the applicable [Guidelines] range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted). Title 18, United States Code, Section 3553(a) provides, in part, that in imposing sentence, the Court shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]

(2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct; [and]

(C) to protect the public from further crimes of the defendant.

Section 3553 also recognizes the need to afford the defendant opportunities for rehabilitation. See 18 U.S.C. § 3553(a)(2)(D). Thus, the Court must first calculate the correct Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence. The district court must also "remain cognizant of them throughout the sentencing process." Gall, 552 U.S. at 50 n.6.

III. Guidelines Calculation

The government agrees with the United States Probation Department's ("Probation") calculation of the defendant's offense level in the PSR as set forth below:

| | | |
|---|---|---:|
| Base Offense Level (§§ 2D1.2(a), 2D1.1(a)(2), 2D1.1(b)(1), (b)(2), (b)(12) | | 17 |
| Less: | Acceptance of Responsibility (§ 3E1.1(a), (b)) | -3 |
| Total: | | 14 |

According to Probation, the total offense level is 14 and carries an advisory Guidelines range of 37 to 46 months' imprisonment, given that the defendant falls within Criminal History Category VI. (See PSR ¶¶ 35, 66.)

IV.     Argument

The government respectfully submits that a sentence above the top of the Guidelines range of 37 to 46 months' incarceration is necessary to achieve the goals of sentencing.

a. The Defendant's Criminal Conduct

A sentence above the Guidelines range will provide adequate deterrence, both specific as to the defendant and general as to others contemplating similar acts. Id. § 3553(a)(2)(B). A significant sentence is necessary to provide such deterrence in this case. Contrary to what the defendant argues in his submission, this is not just a case about $360 worth of heroin. See e.g. ECF No. 56 at 6. Rather, as described above, the defendant sold drugs regularly, and his selling was more prevalent than what he was charged with or what was accounted for by law enforcement in connection with the charging instrument in this matter. The Court is not bound to pretend that the defendant only sold drugs on the handful of occasions that his sales were captured on law enforcement video. As described above, the defendant has a long history of selling narcotics—indeed, the defendant concedes that he has been in and out of jail because of his pattern of selling drugs. Id. He has been arrested for distributing narcotics on numerous occasions, and his detention has not deterred him or prevented him from inflicting the same scourge upon the public. He has repeatedly been released without an adequate punishment. The Court should consider the recidivist nature of the defendant's past behavior in fashioning a sentence that will hold the defendant accountable and deter him from the same behavior because of the serious consequences.

Similarly, a sentence above the Guidelines range is appropriate because the Guidelines range actually understates the defendant's culpability. The defendant's offense level after being credited for three points is 14. The Guidelines range accounts for the amount of narcotics the defendant sold on one occasion, the defendant forcing himself into Wtiness-1's residence, maintaining the presence as a drug house, and maintain a firearm in the residence. But as discussed above, the defendant physically abused Witness-1 and Witness-1's children, attempted to persuade Witness-1 to sell Witness-1's body for sex at a place that the defendant managed, took money from Witness-1 without permission, and forced Witness-1 to sell narcotics for him. Further, the defendant threatened to kill Witness-1 and falsely imprisoned Witness-1 and Witness-1's children when the police were about to arrest him. Accordingly, because the Guidelines range does not account for all of the defendant's criminal conduct, a sentence above the Guidelines range would be appropriate.

The defendant's Guidelines range is also the product of moral luck. His past convictions for selling heroin no longer qualify him as a "Career Offender" under the Guidelines because the statutes under which he was convicted could, theoretically, be applied to someone selling naloxegol. Of course, the defendant was not selling naloxegol, he was selling heroin, over and over again, and the purpose of the Career Offender Guidelines—to punish those who commit serious drug offenses three times—apply with equal force to the defendant.

The "nature and circumstances of the offense," selling heroin and cocaine base, is unquestionably serious. The Court should consider that the defendant distributed heroin and

4

cocaine base in and around public-housing facilities and near a public school. This was in an area where students and other citizens must pass to get to their homes, schools and jobs. The negative effects of drug trafficking are especially troubling here because tenants of public housing often have limited means to extricate themselves from the drug-laden environment, and students often do not have the ability to change schools that they attend. The defendant poisoned the environment from which too many innocent people could not escape, and he did so while physically assaulting his victims, including children, and while attempting to coerce his victims into commercial sex work.

V. Conclusion

The government respectfully requests that the Court impose a sentence above the Guidelines range of 37 to 46 months' incarceration.

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/ Chand E. Edwards-Balfour
Chand W. Edwards-Balfour
Assistant U.S. Attorney
(718) 254-6238

cc: Clerk of Court (WFK) (via Email and ECF)
Counsel of record (via Email and ECF)
U.S. Probation (via Email)