UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,          :
         :
         :
       v.          :      **MEMORANDUM & ORDER**
         :      19-CR-283 (WFK)
ADRIAN MATTEI,         :
         :
        Defendant.   :
-------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On March 26, 2021, Adrian Mattei ("Defendant") pled guilty to the sole count of the Indictment charging him with Distribution and Possession with Intent to Distribute Heroin Near a School in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(C) and 860(a). The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 46 months of incarceration, to be followed by 6 years of supervised release, $360 forfeiture, and a $100 mandatory special assessment.

**BACKGROUND**

On June 20, 2019, the United States of America filed an Indictment against Adrian Mattei ("Defendant") charging him with one count of Distribution and Possession with Intent to Distribute Heroin Near a School. Specifically, the Indictment charged that in August 2018, Defendant distributed and possessed with intent to distribute heroin, a Schedule I controlled substance, within 1,000 feet of New York City Public School 257, located at 60 Cook Street in Brooklyn, New York in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(C) and 860(a). ECF No. 1.

The New York City Police Department ("NYPD") arrested Defendant on related state charges on February 27, 2019. Defendant remained in state custody until June 26, 2019, when he was writted into federal custody and charged in connection with the instant offense. Presentence Investigation Report ("PSR"), ECF No. 36, ¶ 7. On April 8, 2022, Defendant pled guilty to the single count charged in the Indictment without a plea agreement. Def's Memo., ECF No. 56, at 2.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

**DISCUSSION**

**I.     Background**

On July 26, 2018, at the direction of NYPD officials, a confidential informant ("CI") purchased ten glassines of heroin from Defendant for a total of $90.00 within the confines of the 90th Precinct, which serves the northwest portion of Brooklyn, New York. PSR ¶ 3.  A lab report analysis subsequently prepared by the NYPD revealed one of the ten glassines contained 0.067 grams of a heroin and fentanyl mixture and the other nine glassines contained an aggregate weight of 0.594 grams of heroin. *Id.*

On August 7, 2018, at the direction of the Federal Bureau of Investigation ("FBI"), a CI purchased ten glassines of heroin from Defendant  at 131 Moore Street in Brooklyn, New York. *Id.* ¶ 4.  Prior to making this purchase, the FBI provided the CI with a recording device and $100.00 to obtain drugs from the Defendant. *Id.*  A video recording shows the CI approaching the entrance of 131 Moore Street, entering the building, and climbing stairs inside the stairwell of the building. *Id.*  The recording also depicts the CI exiting the stairwell on the 7th floor, where he is shown speaking with an individual to whom he can be heard saying: "who loves you" and "ten cents extra," statements believed to be related to the CI's purchase of heroin. *Id.*  Immediately thereafter, agents recovered $10.00 and ten glassines containing heroin and fentanyl, which the CI reported having purchased from Defendant for $90.00. *Id.*  A lab report analysis revealed these ten glassines contained an aggregate weight of 0.814 grams of a heroin and fentanyl mixture. *Id.*

On August 16, 2018, at the direction of the FBI, the CI purchased ten glassines of heroin from Defendant on the grounds of New York City Public School 257 located in Brooklyn, New

York. *Id.* ¶ 5. A video recording depicting this sale shows the CI conversing with Defendant at the basketball court on school grounds. *Id.* The CI returned with ten glassines of heroin he purchased from Defendant and later supplied to law enforcement. *Id.* A subsequent lab report analysis revealed one of the ten glassines contained 0.039 grams of heroin. *Id.* The nine remaining glassines were not analyzed.

On August 22, 2018, at the direction of the FBI, the CI placed a recorded phone call to Defendant, during which the CI told Defendant he wanted "a whole bagel" and would be there in a few minutes to get it. *Id.* ¶ 6. When the CI returned from meeting the Defendant, he supplied agents with ten glassines of heroin he had just purchased from Defendant. No lab analysis was conducted on these ten glassines. *Id.* Therefore, no aggregate weight of the heroin could be provided. *Id.*

Based on the NYPD laboratory reports, the controlled buys totaled an aggregate weight of 0.633 grams of heroin and 0.881 grams of a heroin and fentanyl mixture. *Id.* ¶ 8.

The NYPD arrested Defendant on related state charges at 131 Moore Street, Apartment 5A, in Brooklyn, New York on February 27, 2019. *Id.* ¶ 7. On June 26, 2019, Defendant was writted into federal custody and charged in connection with the instant offense. *Id.* On April 8, 2022, Defendant pled guilty to the sole count charged in the Indictment without a plea agreement.

## II.    Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case. A sentencing court must also consider the Sentencing Guidelines in addition to the seven factors listed in 18 U.S.C. § 3553(a) when making a sentencing decision. The Court has done so in this case.

The Sentencing Guidelines are merely advisory in light of the Supreme Court's decision in *United States v. Booker,* 543 U.S. 220, 264 (2005). Nevertheless, the Guidelines range is the "starting point and the initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id* at 49. In this regard, the Guidelines provide "the framework for sentencing" and "anchor… the district court's discretion." *Molina-Martinez v. United States,* 136 S. Ct. 1338, 1346 (2016) (internal reference and quotation marks omitted).

If and when a district court imposes a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and …the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.* "The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.).

This Court has considered the applicable Guidelines range as well as the seven factors listed in Section 3553(a). It addresses each in turn consistent with *United States v. Crosby*, 397 F.3d 103, 112 (2d Cir. 2005).

## III. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

1.    **Family and Personal Background**

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on May 27, 1987 in Brooklyn, New York.  PSR ¶ 40.  Defendant's father, Alberto Mattei, passed away in 2015, at the age of 67, after suffering a stroke.  *Id.* Defendant's father worked in construction and janitorial work during Defendant's childhood, but he had to stop working in the early 1990s due to medical issues.  *Id.*  Defendant's mother, Judith Maldonado, age 69, resides in Queens, New York.  She is in good health and is a homemaker.  *Id.* She has remained supportive of her son since his arrest.  *Id.*

Defendant has two living full siblings and one deceased full sibling.  *Id.*  Defendant's brother, Edwin Mattei, resides in Brooklyn, New York with his three children and is in good health.  *Id.*  Defendant reported Edwin was in and out of prison from the late 1990s until 2014 for petit drug offenses.  *Id.* Jason Maldonado, Defendant's other living full sibling, resides in New York, New York, where he works in construction and is in good health.  *Id.*  Defendant's brother, Alberto Mattei, passed away in 2008 from a gunshot wound.  *Id.*

Defendant also has six maternal half-siblings, who are all in good health.  *Id.* ¶ 42. Defendant's sister, Naomi Maldonado, has been incarcerated since 2016 and is serving a 15-year sentence .  *Id.*  Diana Maldonado, another of Defendant's sisters, resides in Brooklyn, New York, with her six children.  *Id.*  Defendant's brother, Ulysses Maldonado, resides in Queens, New York, with Defendant's mother.  *Id.*  Defendant reported Ulysses served 25 years in prison for Murder in the 2nd Degree, beginning in August 1995.  *Id.*  Defendant's brothers, Christian Maldonado and Ruben Maldonado, reside with their respective families in the Tri-State area.  *Id.*  Dorris Maldonado, Defendant's sister, works in law enforcement in Texas.  *Id.*

Defendant and his older siblings were raised by their mother in a lower-income household. *Id.* ¶ 43. Defendant's mother struggled to provide for the family, and often appropriately relied on government assistance, so Defendant and his older siblings began to work during their teenage years to help her support the family. *Id.*

Defendant recalled he and his siblings became involved with the "wrong crowds" early in their teenage years. *Id.* Defendant left home at age 13 and lived with various friends or girlfriends throughout the remainder of his adolescent life. *Id.* It was during his time away from home when Defendant began experimenting with drugs. *Id.* This lasted until 2004 when Defendant was incarcerated for the first of many times at age 17. *Id.* ¶¶ 43, 26 (detailing the nature of this offense).

Defendant has lived with his mother or with his romantic partners since serving his first term of incarceration. *Id.* ¶ 43. He lived with Jessica Walker and their son in Troy, New York from 2012 until 2014 and then in Albany, New York from 2014 until 2016. *Id.* In January 2017, Defendant married Jessica Frias in Albany, New York. *Id.* ¶ 44. The couple separated in 2019 and have no children together. *Id.* Defendant also reported having a relationship with Elizabeth Ruiz. *Id.* ¶ 44. They have one child together. *Id.* However, their relationship ended following one of Defendant's periods of incarceration. *Id.* Ms. Walker, Ms. Ruiz, and their children with Defendant remain supportive of him, despite the fact Defendant has been unable to provide for them financially. *Id.* ¶¶ 46-48.

### 2.   **Educational and Employment History**

Defendant began his education in Staten Island, New York. *Id.* ¶ 56. He was enrolled at I.S. 49 Berta A. Dreyfus middle school for the 6th and 7th grades. *Id.* However, he was eventually expelled for fighting at the school. *Id.* Thereafter, Defendant stopped attending school. *Id.*

However, he did earn a High School Equivalency ("HSE") diploma in August 2007. *Id.* In 2014, Defendant briefly enrolled at Schenectady County Community College where he remained for two semesters. *Id.* ¶ 57. He reportedly dropped out due to his inconsistent living arrangements. *Id.*

Between 2008 and 2014, Defendant reported doing "independent work," such as promoting music or creating graphic designs. *Id.* ¶ 60. Prior to this period, Defendant was unemployed and admitted he supported himself by selling drugs. *Id.* In 2014, Defendant reportedly worked at Dunkin' Donuts in Troy, New York for five months. *Id.* ¶ 59. Between 2015 and his arrest in February 2019, Defendant was unemployed and supported himself by doing independent work. *Id.* He also reported his ex-wife Jessica Frias helped support him while they were a couple. *Id.*

### 3.     Prior Convictions

Defendant has spent his adult life enmeshed in the criminal justice system. *Id.* ¶¶ 26-31 (detailing Defendant's adult criminal convictions).

In December 2004, at the age of 17, Defendant was arrested and charged with Criminal Possession of a Controlled Substance in the 3rd Degree in Kings County, New York. *Id.* ¶ 26. He was convicted of this Class B Felony and sentenced to a term of 16 months to 4 years imprisonment. *Id.* While incarcerated, Defendant obtained several infractions, including those for violent conduct and disobeying direct orders. *Id.*

Defendant was arrested again in September 2006 in New York County, New York. *Id.* ¶ 27. Defendant was charged and subsequently convicted of Criminal Possession of a Controlled Substance in the 4th Degree. *Id.* He was sentenced to a term of imprisonment of two years for this Class C Felony offense. *Id.*

Defendant was arrested again shortly after his release.  In September 2008, Defendant was arrested, charged, and ultimately convicted of Criminal Sale of a Controlled Substance in the 5th Degree, a Class D Felony, in Kings County, New York.  *Id.* ¶ 28.  He was subsequently sentenced to a term of one year of imprisonment in August 2009.  *Id.*

In April 2012, Defendant was arrested yet again in New York County, New York.  *Id.* ¶ 29.  He was charged and convicted of Criminal Contempt in the 2nd Degree and sentenced to a term of imprisonment of six months.  *Id.*

He was charged with Criminal Contempt in the 2nd Degree in New York County, New York for a second time in October 2014.  *Id.* ¶ 30.  Defendant did not serve a term of imprisonment for this offense, but instead was sentenced to a term of three years of probation.  *Id.*

In August 2016, Defendant was arrested and charged with Attempted Criminal Sale of a Controlled Substance in the 3rd Degree, a Class C Felony, in Albany, New York.  *Id.* ¶ 31.  He was ultimately convicted and sentenced to two years imprisonment and 18 months post-release supervision.  *Id.*  While in custody for this offense, Defendant incurred several infractions, including those for creating a disturbance in violation of direct orders and smoking in unauthorized locations.  *Id.*  According to New York State Department of Corrections and Community Supervision ("DOCCS") documents, Defendant was paroled on May 4, 2018 and thereafter began his term of supervision in Brooklyn, New York.  *Id.*  Defendant failed to comply with the terms of his supervised release, not participating in his mandated substance abuse treatment and not obtaining employment.  *Id.*  Defendant also failed to report to his parole officer on numerous occasions, leading to the issuance of an absconder warrant on December 5, 2018.  *Id.*

Defendant was remanded to state custody on February 27, 2019 due to a new arrest on that date for Criminal Possession of a Weapon in the 4th Degree.  *Id.* ¶ 37.  This arrest occurred

following a domestic dispute between Defendant and his female companion ("the witness") at her apartment at the Bushwick Houses located at 131 Moore Street in Brooklyn, New York. *Id.* ¶ 37.

Defendant first met the witness in October 2018. *See* Transcript of this Court's January 30th, 2023 Evidentiary Hearing ("Jan Tr.) at 15:22-16:21. Defendant began using the witness's apartment to prepare crack cocaine and to conduct drug sales. *Id.* He also began storing a firearm in the witness's closet, in the home she shared with her children. *Id.*

Between the time Defendant met the witness until his arrest in February 2019, Defendant had verbally and physically abused the witness and her children on numerous occasions. *Id.* at 21:20-22:1. Defendant also threatened to kill the witness. *Id.* Indeed, on the day of his arrest on February 27, 2019, Defendant forced the witness and her children into a closet and told them to remain there and be quiet or else they would be killed. *Id.* at 30:22-33:10. The witness and her children adhered to Defendant's orders until he ultimately submitted to the police and was placed under arrest. *See* Gov't Memo., ECF No. 57, at 2.

The next day, on February 28, 2019, an absconder warrant was lodged against Defendant. PSR ¶ 31. His parole was revoked on April 30, 2019, and on July 30, 2019, Defendant was arrested for the instant offense and remanded into federal custody, where he remains. *Id.*

### 4.   **Medical and Mental Health**

Defendant reported no history of physical, mental, or emotional health problems. *Id.* ¶¶ 51-52.

### 5.   **Substance Abuse**

Defendant began using drugs as a young teenager. Defendant reported first trying marijuana at 13 years old. *Id.* ¶ 53. Defendant used the drug on a daily basis until he was taken

into federal custody in 2019. *Id.* Defendant also reported experimenting with ecstasy and molly at the age of 24, but he claimed this drug use was isolated to one instance. *Id.*

Defendant also began consuming alcohol as a teenager. *Id.* ¶ 60. As with his marijuana use, Defendant first consumed alcohol at the age of 13 and he continued drinking until 2019 when he entered federal custody. *Id.*

Defendant reported participating in the Pac Program in Brooklyn, New York in an attempt to address his substance abuse. *Id.* ¶ 55. However, Defendant admitted his participation in the program was unsuccessful. Records obtained from DOCCS confirm Defendant failed to participate in substance abuse treatment mandated as part of the terms of his parole on state charges. *Id.* Defendant was enrolled in a substance abuse treatment program while in custody on state charges in 2017. *Id.* However, DOCCS records indicate he was removed due to poor participation and a lack of progress. *Id.*

### 6. Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* at Section I.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense and punishes Defendant accordingly.

The Court's sentence also seeks to deter Defendant and others from engaging in similar criminal activity and from disregarding U.S. law.

Beyond seeking to achieve the aims of specific and general deterrence, this Court also seeks to justly punish this Defendant for the grave offense he has committed, which included selling heroin near a public school and in public housing facilities, thereby exposing young children and other citizens to extremely dangerous conditions—a risk which this Defendant appears to have disregarded. Indeed, as the nature and circumstances surrounding the instant offense evince, this Defendant not only disregarded the risks he was imposing on his community by partaking in his illicit drug enterprise. He actively, in effect, terrorized those around him—the witness and her children—when doing so. The Court does not overlook this.

### C.    The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to the sole count of the Indictment, charging him with Distribution and Possession with Intent to Distribute Heroin Near a School in violation of  21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 860(a).

On this Count, Defendant faces a statutory minimum term of imprisonment of one (1) year and a maximum term of imprisonment of forty (40) years pursuant to  21 U.S.C. §§841(a)(1), 841(b)(1)(C) and 860(a).  The statute also requires the Court to impose a term of supervised release not less than six (6) years. *See* 21 U.S.C. §§ 841(b)(1)(C) and 860(a).  Defendant is ineligible for probation because it is expressly precluded by statute. *See* 21 U.S.C. § 860(a).

In addition to facing terms of imprisonment and supervised release, Defendant also faces a maximum fine of $2,000,000.00 pursuant to 21 U.S.C. §§ 841(b)(1)(C) and 860(a), and a mandatory special assessment of $100.00 per count pursuant to 18 U.S.C. § 3013, which the Court is required to impose in all cases and which the Court does impose here.

As indicated in the Indictment, the Government will seek forfeiture in accordance with 21 U.S.C. § 853(a). Moreover, pursuant to 21 U.S.C. § 862, Defendant shall be permanently ineligible for certain federal benefits upon a third or subsequent conviction for distribution of a controlled substance. Lastly, on this point, the Defendant also faces a broad range of collateral consequences as a result of this felony conviction.

### D.    The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

The applicable Guideline for this violation of 21 U.S.C. §§ 841 and 860(a) is U.S.S.G. § 2D1.2. PSR ¶ 15. Pursuant to this provision, the base-level offense for Count One is one plus the offense level from U.S.S.G. § 2D1.1 applicable to the total quantity of controlled substances involved in the offense. *Id.* Since Defendant is responsible for approximately 2.835 kilograms of converted drug weight, the initial base offense level is 10. *Id.*

Several offense level enhancements apply to account for Defendant's conduct surrounding the instant offense. *Id.* ¶¶ 15-19:

Since Defendant possessed a firearm in connection with the instant offense, two levels are added per U.S.S.G. § 2D1.1(b)(1). *Id.* ¶ 15.

Since Defendant used violence and credible threats to use violence against the witness as an intimidation tactic while residing in her home, two levels are added per U.S.S.G. § 2D1.1(b)(2). *Id.*

And, since Defendant maintained a premise for the purpose of distributing the controlled substances in the instant offense, two levels are added per U.S.S.G. § 2D1.1(b)(12). *Id.*

These upward enhancements result in a subtotal adjusted offense level of 17. *Id.* ¶ 20. This figure is reduced by two-levels per U.S.S.G. § 3E1.1(a) due to Defendant's acceptance of responsibility. *Id.* ¶ 22. It is further reduced by an additional one-level per U.S.S.G. § 3E1.1(b) due to the fact Defendant timely notified the Government of his intent to enter a plea of guilty. *Id.* ¶ 23.

Taking all adjustments into account, Defendant's total adjusted offense level is 14. *See* Gov't Fatico Ltr., ECF No. 50 at 4, n.1 (noting Defendant does not qualify as a career offender in light of the Second Circuit's opinion in *United States v. Gibson*, 55 F.4th 153 (2d Cir. 2022), and therefore finding the Chapter Four Enhancement Probation applied at the time it prepared the PSR, which increased Defendant's subtotal adjusted offense level to 34, must be discarded); *see also* Probation's Second Addendum to the PSR, ECF No. 58 at 1 (amending the PSR in the wake of the Court's determination the Defendant is not a career offender and calculating a total adjusted offense level of 14).

As previously stated, Defendant's criminal history is extensive. Defendant's criminal history as detailed *supra* in Section III(A)(1)(3) results in a subtotal criminal history score of 14. PSR ¶ 32. Two points are added to this score per U.S.S.G. § 4A1.1(d) because Defendant committed the instant offense while on parole for his June 2, 2017 conviction for Attempted Criminal Sale of a Controlled Substance in the 3rd Degree. *Id.* ¶¶ 31, 33; *see id.* ¶ 31 (detailing

13

this offense). This results in a total criminal history score of 16. *Id.* ¶ 34. According to the sentencing table in U.S.S.G. Chapter 5, Part A, a criminal history score of 16 establishes a criminal history category of VI (6). *Id.*

Accordingly, Probation and the Government argue, based on a total adjusted offense level of 14 and a criminal history category of VI (6), the Guidelines recommend a range of imprisonment between 37 and 46 months. *See* Gov't Memo., ECF No. 57, at 1; Probation's Second Addendum to the PSR ¶ 66.

As with Probation and the Government, the defense calculates Defendant's offense level pursuant to U.S.S.G. § 2D1.2. Def's Obj. to PSR, ECF No. 37, at 1. The defense also agrees Defendant is accountable for a total of 2.835 kilograms of converted drug weight based on the aggregate weight of .633 grams of heroin and .881 grams of a heroin and fentanyl mixture at issue in this case, leading the defense to calculate a base offense level of 11 per U.S.S.G. §§ 2D1.(c)(15) and 2D1.2 (a)(2). *Id.* However, in their letter objecting to the PSR, the defense notes the base offense level cannot be less than 13 per U.S.S.G. § 2D1.2(a)(4). *Id.* Therefore, the defense calculates a subtotal base offense level of 13. *Id.* The defense also applies a two-level reduction to account for Defendant's acceptance of responsibility, which results in a total adjusted offense level of 11. *Id.* This figure differs slightly from the offense level the defense calculates in its sentencing memorandum. *Cf.* Def's Memo at 2 *with* Def's Obj. to PSR at 1. Wherein, the defense calculates a total adjusted offense level of 9. Def's Memo. at 2. Assuming the defense stands by this later calculation, the defense argues a total adjusted offense level of 9 combined with his criminal history category of VI (6) results in a recommended Guidelines range of 21 to 27 months. *Id.* at 3. The defense recommends a sentence of 24 months' imprisonment, accordingly. *Id.* at 3.

14

In reaching this calculation, the defense rejects the six-level enhancement Probation and the Government applied to account for Defendant's "relevant conduct." *Id.* at 2. As previously discussed, these enhancements account for the fact (1) Defendant possessed a firearm in connection with the instant offense (+2 levels); (2) Defendant used violence and credible threats to use violence against the witness as an intimidation tactic while residing in her home (+2 levels); and (3) Defendant maintained a premise for the purpose of distributing the controlled substances in the instant offense (+2 levels). PSR ¶ 15; Gov't Memo. at 3.

The defense justifies their rejection of these enhancements for several reasons. Def. Obj. to PSR at 2-3. First, the defense argues these enhancements account for conduct that is not relevant to the instant offense and therefore that this conduct should not factor into the Guidelines calculation in this case. Specifically, the defense is referring to conduct that occurred leading up to and during Defendant's arrest on February 27, 2019. On this date, NYPD officers were called to apartment 5A at 131 Moore Street in Brooklyn regarding an ongoing domestic dispute that had been reported to them. *Id.* at 2. Officers subsequently charged Defendant with several misdemeanors including Possession of a Weapon in the 4th Degree and Unlawful Imprisonment in the 2nd Degree. *Id.* In May 2019, FBI agents obtained a witness statement reporting the Defendant had "used intimidation tactics and threats of violence to forcibly reside in her apartment at 131 Moore Street." *See* PSR ¶ 9. Moreover, according to the witness, Defendant also brought a firearm into her home, threatened her, and was utilizing her home to prepare and distribute drugs. *Id.*

The defense argues, assuming *arguendo* these allegations are true, this conduct should not factor into Defendant's offense level computation. That is because it did not occur "during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[,]" nor was it part of the same course

of conduct or common plan or scheme as the Guidelines require, according to the defense. *See id.* at 2 (quoting U.S.S.G. § 1B1.3(a)). The defense notes this event occurred six months after Defendant's offense in the instant case and that this witness did not even know the Defendant at the time his instant offense took place. *Id.* In that regard, the defense maintains the two incidents have nothing to do with each other. *Id.* Therefore, the defense argues, Defendant's conduct from his February 2019 arrest should not factor into the Guidelines calculation for the instant case. *Id.* The Government disagrees. *See* Gov't PSR Response Ltr., ECF No. 38, at 13.

The Government raises several points in support of the six-level enhancement accounting for Defendant's relevant conduct. *Id.* It cites case law from the Second Circuit holding admitting a general, ongoing course of conduct as a drug dealer is sufficient to establish a relationship between possession of even two different drugs over a year apart. *Id.* (referencing *United States v. Mack*, 524 F. App'x 756, 757 (2d Cir. 2013)). In light of this ruling, the Government argues the relationship between Defendant's drug dealing to confidential sources in the Bushwick Houses and his continued drug dealing two months later, still in the Bushwick Houses—coupled with Defendant's discussion with law enforcement about his local suppliers—demonstrates his later conduct was in fact a continuation of Defendant's July and August conduct of conviction. *Id.* The Government maintains it is not dispositive the Defendant did not know the witness in question when he was selling drugs to the CIs as courts within this Circuit do not require such a showing. *Id.* (referencing *United States v. Santiago*, 906 F.2d 867, 873 (2d Cir. 1990) ("[T]he prior sales were part of the same course of conduct as the [later] sale. The fact that sales had been interrupted because of [the defendant's] arrest, which obviously altered the behavior pattern of [the defendant], had no relevance to whether the [later] delivery was part of the same course of conduct.")). The Government here argues the similarity between the instant offense and the conduct giving rise to

Defendant's February 2019 arrest, which both involved his dealing of cocaine base, heroin, and fentanyl to users in the same housing projects, favors the Government's view. *Id.* (referencing *United States v. Burnett*, 968 F.2d 278, 280 (2d Cir. 1992) (finding no error in adding cocaine transactions with marijuana transactions as "relevant conduct")). The Government also argues the repetitive nature of Defendant's sales and the close temporal proximity between his sales also favors counting them as relevant conduct. *Id.* (citing U.S.S.G. 1B1.3 cmt. 5(B); *Santiago*, 906 F.2d at 872-73).

In its Sentencing Memorandum, the Government argues even if Defendant's later conduct involving the witness and the continued distribution of drugs from the Bushwick Houses was not relevant to the Guidelines, it is relevant to the Court's considerations under 18 U.S.C. § 3553(a) and therefore it is proper for the Court to consider it at sentencing,  Gov't Memo. at 2, and Probation agrees. *See* Addendum to the PSR at 2; Probation's Revised Recommendation, ECF No. 58-1 at 2-3.

The Government not only argues the six-level Guidelines enhancement is appropriate, but also urges the Court to impose a sentence above the Guidelines range of 37 to 46 months. Gov't Memo. at 4-5.  In support of its position that an upward variance is warranted, the Government argues this Defendant regularly sold drugs and claims his selling was more prevalent than what he was charged with or what law enforcement accounted for in connection with his charging instrument.  *Id.* at 4.  The Government also argues such a sentence is needed to reflect this Defendant's lengthy criminal history and troubling personal characteristics.  The Government reminds the Court the defense even conceded in its Sentencing Memorandum the Defendant had been in and out of jail due to his repeated history of selling drugs, and that his numerous drug

arrests and drug-related detentions did little to deter him from committing future crimes or from "inflicting the same scourge on the public." *Id.* at 4 (referencing Def's Memo. at 6).

Probation also urges the Court to impose a significant custodial sentence, 46 months—which is at the top of the recommended Guidelines range—but Probation does not ask the Court to exceed the Guidelines range. *See* Probation's Revised Recommendation at 1 (noting the recommended Guidelines range is between 37 and 46 months; recommending 46 months' imprisonment and the statutory minimum term of supervised release of 6 years, with special conditions). In making its recommendation, Probation argues the distribution of heroin is a serious offense and requires a punishment that will provide both specific and general deterrence. Probation's Recommendation, ECF 36-1 at 2. Probation also argues a lengthy sentence is warranted here because of the Defendant's use of intimidation tactics and threats of violence to maintain a residence for purposes of distributing heroin and considering the fact that he kept a firearm in this same home and thereby put innocent children at risk. *Id.; see also* Probation's Revised Recommendation at 2. The Court agrees.

The Court notes the defense's own claims and admissions regarding this Defendant's criminal nature and tendencies. *See* Def. Memo at 6 ("[The Defendant] is clearly a product of his environment…[the Defendant] ultimately turned to using and selling drugs to support himself…[the Defendant] is coarse, argumentative, and controlling."). The same traits he touts for surviving street life are actually violations of the law. This Court also agrees with the Government's legal analysis regarding the Defendant's relevant conduct: the six-level Guidelines enhancement taking this conduct into account is warranted. The Court finds it appropriate to consider such conduct at sentencing; the Court is expressly permitted under statute to do so. *See* 18 U.S.C. § 3561 ("No limitation shall be placed on the information concerning the background,

character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."").

The Court acknowledges the letters Defendant's loved ones have written on his behalf. *See* Exhibits to Def's Memo, ECF No. 56-1. The Court has read the words of Defendant's siblings and his friends urging the Court to be lenient on this Defendant given the unfortunate and difficult circumstances surrounding his upbringing and pleading with the Court Defendant is worthy of another chance to try and correct his life and become a productive, law-abiding citizen. *Id.* The Court cannot fail to observe, however, the fact similarly situated family members, neighbors, and friends abide by the law.

The Court acknowledges Defendant has taken advantage of several opportunities while incarcerated to manage his anger, improve his general disposition, and acquire useful skills and trades. *Id.* The Court encourages the Defendant to continue to embrace rehabilitative and educational opportunities to the utmost extent he can. The Court trusts these programs will inspire the Defendant to direct the course of his life away from crime, which, unfortunately, has constituted the path he has followed throughout his adult life.

The Court has carefully considered all arguments before it and determines the sentence it imposes today is adequately tailored to this Defendant, in accordance with the applicable statutes and Guidelines provisions, and in particular consideration of the nature of the Defendant's offense and his personal characteristics.

### E.     Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).  Neither party has drawn such

a statement to the Court's attention.  Finding none on its own, the Court proceeds to the next § 3553(a) factor.

### F.    The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires this Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).  For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G.    The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor requires this Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).  However, this factor is not relevant here as restitution is not required in this case.

## IV.    CONCLUSION

A sentence of 46 months of incarceration to be followed by 6 years of supervised release with special conditions, forfeiture in the amount of $360, and a $100.00 mandatory special assessment is appropriate and comports with the dictates of § 3553. The Court does not impose a fine because Defendant appears unable to pay a fine.

This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and the addenda thereto, barring any errors contained therein, to the extent they are not inconsistent with this opinion.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated:   March 22, 2023
         Brooklyn, New York